Fish, J.
(dissenting).—There was no negligence shown on the part of defendant. If lack of care is chargeable to either party, it is the plaintiff. There is no pretense but that sidewalks and crosswalks on William street and Sanders street were properly constructed, nor is there any evidence showing that the arrangement of the open gutters along Sanders street, and the water escape under the crosswalk at the junction of William street was not a proper-plan or arrangement, or one unnecessarily dangerous. The defendant had a right to establish its own plan of sidewalk and drainage. It was proper to have drainage, both for convenience and comfort of the public. It was perfectly competent for defendant to maintain open gutters along the streets; to establish crosswalks to accommodate pedestrians, and to construct sewers and water escapes. It is. not claimed that these arrangements were unusual or unnecessary.
For the purpose of making the crossing from sidewalk to crosswalk safer for pedestrians, so they would be less likely to step off into the gutter, a triangular addition was added at the junction of Sanders street sidewalk and the-starting place of the crosswalk.
It was in the breaking up season of the year, when the elements create much disturbance of the face of the earth, and change from day to day, freezing and thawing alternately. At times given points were flooded with water, and sometimes when the sewers and water escapes thawed out the water abated.
This was precisely the condition of things at the corner made by William and Sanders streets.
On the day of the accident to plaintiff, defendant’s commissioner had seen the necessity of relieving the flow of water on Sanders street, and opened the gutter along the street to the water escape under the crosswalk at the side of William street. In the warm season that gutter was maintained open. It was .only the ice and snow that ob *299 structed it. Unless the ice and snow were removed, the gutter would not discharge. It was opened only for that purpose and was discharging.
The weather turned cold at night; ice was again formed, and the water obstructed. Slack water filled the gutter and water escape, so it was, as it looked in the night-time, apparently level.
The plaintiff ventured out on a very dark night, at that "time of the year when he was bound to know that it it was difficult to keep gutters and streets in good order. If it had been day-time, he would have known where the sidewalks and crosswalks were; it being very dark, he could not see well, and he walked off the crossing into the gutter.
Witness Inglee, who was sworn for plaintiff, states the case substantially as follows, on his direct:
“It had been raining some that day; water had set back; there was no chance for it to escape; the hole under the sidewalk had been choked up; I noticed John Townsend and a man- helping him; they were at work cleaning the ice and snow from the side of the street that leads to this hole; when I came back from dinner, the work had been completed, and there was a hole or ditch where the water could run under the walk. It was raining. The street inclines from the bridge easterly to the William street walk. The water was running along Sanders street, easterly to the junction of Sanders and William streets; before dinner the water was running over the walk, and after dinner "under the walk. I saw a hole there where it had been excavated under the sidewalk.”
And again: “I went by the same place about six o’clock, going to my supper. It had turned cold; ice was forming on the Sanders street walk.”
And witness Inglee, on his cross-examination, further testified:
“There was a gutter outside of the Sanders street walk, leading down from this bridge, against the walk, -as gutters usually run outside of the walk. The incline is enough to make the water run down freely. There was nothing which I observed, which prevented the water from running out of the mouth of it, more than it was blocked with ice and snow, I suppose.”
And again: “It was a bitter cold night; the wind was piercing. There was light enough to see where to go. I did not go into any gutter; I held on to the railing until I came to the end; had no difficulty in distinguishing the walk and using it.”
And again: “When I saw the place at noon they were digging snow and ice out of the gutter. At that time the *300 water was running over the sidewalk at noon. When I ■ came back no one was there at work. The indications were that snow had been dug out to let the water run through under; the walk. It was then running through under the walk.
And again: “ When I came back at six o’clock there was no water running. The edge of the walk could be easily distinguished at six o’clock. Ice had formed. I looked at it as I passed by; I noticed lots of water in the street at noon; it began freezing hard as the night came on.”
The referee found as a fact that the street commissioner caused to be excavated a deep and dangerous hole or trench at the corner of Sanders street at the junction with William, and that the same was wrongfully suffered by defendant to remain open and exposed and without guards or lights.
The hole which the referee had in view was nothing more or less than the gutter along the sidewalk, on Sanders, street, and the water escape under the crosswalk at the junction with William street. It was an open gutter which had been maintained for many years, intended to carry off the surface water, and its chief hole was the water escape where it led under the crosswalk on its way into the sewer.
The street commissioner had cut into the ice and snow along the gutter to open the drainage so as to carry off the water, which act constitutes the excavation found by the referee.
The sidewalks and crosswalks were all in good order, except so far as the ice and flow of water made them otherwise, and the traveled part of the street was free from obstructions.
The defendant excepted to these findings of fact, and I think the exceptions well taken.
The same finding could, with equal propriety, be made, had the plaintiff, in the night-time, when he could not see, ran against a lamp-post or stepped off of the sidewalk over the curbstone.
If it is proper for a village to maintain surface drainage along the side of streets, there must necessarily be some depression and descent to make the water run, and there must be some proper place sufficiently open to let the water pass into the sewer. Every such structure must be open, and, in one sense, it is somewhat dangerous.
The negligence charged against defendant, is that no lights were maintained and no guards put up to keep people out of the gutter. The defendant is not by law required to maintain street lights, and is not chargeable with negligence for that cause. Furthermore,. street lights in this *301 case, would have been of no value to plaintiff. He could not see the gutter way, because the slack water had backed up and covered it over; so he could not see where the excavation was. If there had been more light, it would not have aided him to avoid the danger. Lights might have been maintained; so might plaintiff, when traveling out on a dark night, have taken the precaution fco carry a hand lantern. If defendant is chargeable with negligence in not having lights on the street, why is not plaintiff equally blamable for traveling in the dark, when he might carry a light ?
So, as to putting up guards. There was no evidence given to show that guards were practicable, or what kind of guards Must it be held that a village is bound to put up fences along the sidewalk to guard people from stepping off into the sluices or water runs ?
Here was nothing to guard but the water way along the sidewalk, maintained to drain the surface water.
It is said that the commissioner in cutting it open at this time, let it down a few inches deeper than its usual depth.
Assume that this was so, the casualty to plaintiff did not arise from that cause. If it had been only a foot deep instead of fifteen inches, the plaintiff would have walked into it all the same; and the difference of three or four inches in depth, probably made no difference to his fall.
The chief question under consideration, is whether a village is chargeable with negligence for having gutters and water sluices, curb-stones and water escapes, because of necessity such structures create some danger, that pedestrians may step in or trip upon them.
This is not a case of negligence for having an obstruction on the sidewalk or in the traveled part of the street; but something done by the village to increase the comfort of travelers. The village might have let it stand in a state of nature; but instead these works were constructed so that those, who walk in darkness, would be less likely to fall. If this action can be maintained, then every improvement made by a village, instead of relieving it from censure, will add to its responsibilities. There was no structure ever put up about a village, but what may, at times, hurt somebody
Every sidewalk and curbstone, every crosswalk and guttur, every sewer and every water escape, every lamp-post and shade tree, every tie post or stepping stone,—is, in one sense, dangerous, and occasionally some careless person will be hurt by them.
The referee also found that the plaintiff accidentally, and *302 without fault, negligence or loches on his part, fell into the excavation. And to this finding the defendant excepted.
The plaintiff was walking out with a child in his arms, on a dark night. He says, “it was very dark,” and to use his language: “I walked right along from there to the.triangle, and walked right into the hole.”
When called upon to describe the appearance of the place, he answered, “it looked bad and dangerous.”
How can it justly be said that a person who sees what looks like a dangerous spot, along a street, who walks straight along without feeling his way, until he gets into it, is free from negligence ? If the offensive spot had been in the sidewalk or in the traveled part of the street, it might have been more excusable on his part; but there is no proof that the sidewalk or main avenue of the street, was not in good order.
When he saw a dangerous place before Mm in the darkness of night, it was his duty to stop and see if he could not avoid it. If he had kept on the sidewalk, he would have been safe; or if he had made a slight detour into the centre of the street, he would have avoided the danger. Instead of doing so, he tells the court that he moved directly into the danger.
It has been said that a person may walk or drive in the darkness of night, relying upon the belief that the street or sidewalk is kept free from dangerous obstructions; but this rule applies only where the dangerous spot was left in the sidewalk or the usually traveled part of the street. It will not protect the traveler who takes the chances of a dark night, and in the darkness gets off of the regular walk. If, in the dark, he steps into a water sluice, or comes in collision with some side structure, he ought not to be protected.
For the reasons and upon the grounds thus stated, the judgment should be reversed, and new trial granted. Referee discharged. Costs to abide event of the action.